UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARGIE A. ROACH,

    Plaintiff,

v.                                                                  CASE No.  8:05-CV-460-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claims for a closed period of Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence, the decision will be affirmed.

### I.

The plaintiff, who was sixty years old at the time of the first administrative hearing and who has the equivalent of a high school education,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

has worked as a cashier, stock person, cabinet maker, and mobile home maintenance engineer (Tr. 28, 29, 30, 66, 76). She filed claims for Social Security disability benefits and supplemental security income payments in June 1998, alleging that she became disabled on May 28, 1998, due to problems with her back, left knee and left shoulder (Tr. 64). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff suffered from severe impairments of low back pain associated with minimal degenerative changes in the lumbar spine and chronic obstructive pulmonary disease (Tr. 19, ¶3). The law judge concluded that these impairments limited the plaintiff to a full range of light work, but did not preclude her from returning to her past relevant work as a clerk and cashier (Tr. 19, 20). Accordingly, the law judge found that she was not disabled (Tr. 20). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

The plaintiff sought review of the decision in this court (Case No. 8:02-CV-215-T-TBM). Subsequently, United States Magistrate Judge Thomas B. McCoun, III, reversed the decision and remanded the matter for

further proceedings because the record was not adequately developed regarding the physical requirements of the plaintiff's prior jobs of cashier and clerk (Tr. 286-93).

The Appeals Council consequently vacated the administrative decision and remanded the matter to an administrative law judge (Tr. 284). The same law judge then conducted a second hearing, at which testimony was received from a vocational expert, as well as the plaintiff. At the hearing, the plaintiff requested an amendment of her application to reflect a closed period of disability from May 28, 1998, through November 6, 2001 (Tr. 367).[2] The period of disability closed on November 6, 2001, because the plaintiff returned to her prior work as a cashier on November 7, 2001 (id.).

As a result of the hearing, the law judge found that the plaintiff suffered from osteoarthritis, COPD (chronic obstructive pulmonary disease), and depression, which the law judge determined were, in combination, severe impairments (Tr. 271). He concluded that these impairments limited the plaintiff to a wide range of light work that did not expose her to fumes, odors, dusts or gases (Tr. 273). The law judge found further that she had mild

---

[2]This period reflects the combined consideration of the plaintiff's June 1998 application and a second application filed in September 2001.

restrictions in her ability to engage in daily activities, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace (id.). Based upon the testimony of a vocational expert, the law judge concluded that, during the relevant period, the plaintiff could have performed her past work as a cashier (Tr. 275, 391). Accordingly, the law judge decided that the plaintiff was not disabled during the period May 28, 1998, through November 6, 2001 (Tr. 275). The Appeals Council again let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The

Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

As indicated, the law judge found that, during the plaintiff's alleged period of disability, the plaintiff had the residual functional capacity to perform light work and that the only restriction on that ability was the need to avoid exposure to fumes/odors/dusts/gases, etc. (Tr. 274-75). Consequently, the law judge concluded that the plaintiff could have returned to her past relevant work as a cashier (Tr. 275). The plaintiff challenges this determination on several grounds.

A. The plaintiff argues first that the law judge failed to consider the effects of her shoulder and knee pain on her ability to perform the reaching, standing and walking requirements of the cashier job (Doc. 19, pp. 7-10). This contention is baseless.

In his decision, the law judge acknowledged the plaintiff's testimony that she suffered from knee and shoulder pain, which made it difficult for her to walk, stand, and reach (Tr. 271, 272). The law judge, however, did not accept fully this testimony (Tr. 272). Rather, he found that the medical evidence showed only minimal degenerative changes in the knee

-6-

and no specific abnormalities in the shoulder (id.).[3]  Further, the law judge stated that the plaintiff's allegations of debilitating pain were inconsistent with her daily activities and mild pain treatment (Tr. 272, 273).  The law judge therefore concluded that she retained the capability of performing light work with only environmental limitations (Tr. 273).  The vocational expert, moreover, testified that the plaintiff's prior work as a cashier satisfied these light work restrictions (Tr. 391).  In fact, the plaintiff returned to her prior work as a cashier for K-Mart the day following the close of her alleged disability period.[4]

The plaintiff contends that, in reaching the conclusion she could return to work as a cashier, the law judge failed to consider fully the following (Doc. 19, p. 8):

---

[3]The record also includes findings from medical examinations of the plaintiff in 2003, which show more serious impairments than existed during the period of disability (Tr. 344-48, 349-56).  The law judge acknowledged these opinions, but concluded reasonably that these reports do not constitute objective medical findings supporting the plaintiff's reports of debilitating pain years earlier (Tr. 273).  In this regard, Dr. R.W. Springstead, an orthopedic specialist, stated that the earliest point his findings would relate back to was June 2002 (id., Tr. 348), which is many months after the close of the disability period and after the plaintiff had returned to work as a cashier.

[4]The plaintiff no longer works for K-Mart.  She has given contradictory explanations as to why she does not work there and when she stopped working.  Compare Tr. 349 (she left K-Mart in April 2002 because of severe pain in her shoulder and back pain) with Tr. 357 (she left K-Mart in April 2003 because the store closed).

> [M]edical evidence [that] shows ... complaints of the left shoulder, and diagnoses of arthritis (although not specifically assigned to the shoulder)(T. 153, 224-229)....
>
> Further, the Plaintiff has alleged knee problems, with pain and swelling, during the relevant period.... While it is ... impossible to determine with any specificity whether most of the references to arthritis concerned the shoulder, knee, both and/or other areas, there are specific references, during the relevant period, to knee problems (T. 227, 228, 229) including x-rays showing spurring and lipping, and narrowing of the joint space. (T. 234).

As indicated, the law judge considered the plaintiff's complaints of shoulder pain, and the plaintiff has not cited any evidence contrary to the law judge's finding that there were "no specific abnormal findings with respect to [her] shoulder" (Tr. 272). Further, the medical report that references left knee spurring and lipping and narrowing of the joint space concluded the plaintiff's left knee was "[n]egative for any acute pathology" (Tr. 234). Therefore, this reference does not undermine the law judge's finding that "the medical evidence for the period at issue reflects ... only minimal degenerative changes in the ... knee...." (Tr. 272).

Moreover, the plaintiff's contention that the arthritis was not attributed to a particular part of her body is flawed, because the medical

records, when viewed in chronological order, reflect that the diagnosis of arthritis pertained to the lumbosacral spine and left knee (Tr. 227). The subsequent progress notes merely repeat this arthritis diagnosis (Tr. 225-26). Importantly, the plaintiff's arthritis was characterized as "minimal," based on an x-ray report that found minimal or very minimal degenerative changes (Tr. 227, 234). Notably, no physician, treating or otherwise, has opined that, during this period, the plaintiff's impairments imposed any physical limitations greater than those found by the law judge. Therefore, the plaintiff's argument that the law judge did not consider fully the effects of the plaintiff's shoulder and knee pain on her ability to perform as a cashier is unpersuasive.

To the extent that the plaintiff suggests that the law judge did not consider the combined effect of the plaintiff's impairments, that suggestion is meritless. Several statements by the law judge show otherwise. See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002). Thus, for example, the law judge found that "the claimant had osteoarthritis, COPD, and depression, a combination of physical impairments that was severe within the meaning of the Regulations" (Tr. 271). He also said that "[t]he Regulations require that if a severe impairment exists, all medically

determinable impairments must be considered in the remaining steps of the sequential analysis" (Tr. 269).

  B.  The plaintiff's next argument is that the law judge should have "recontact[ed] the physicians with whom the Plaintiff had treated during or up to the relevant time period, and who have mentioned arthritis and/or the shoulder, hip and knee problems" (Doc. 19, p. 10).  This contention lacks merit.

  The law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  This, however, merely requires the law judge to develop the claimant's medical history for the twelve months preceding the filing of the disability application. Id.  The plaintiff does not allege that the law judge failed to do this.

  Rather, the plaintiff cites in support of her contention 20 C.F.R. 404.1512(e) and 416.912(e), which provide that medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. Johnson v. Barnhart, 138 Fed. Appx. 186, 189 (11th Cir. 2005) (unpub. dec.), 2005 WL 1414406. However, the plaintiff has failed to show that this record was inadequate to make a disability determination.  Thus, the plaintiff does not suggest what additional

information is necessary for the law judge to make a disability determination. See Johnson v. Barnhart, supra (a remand is appropriate only when "the record reveals evidentiary gaps which result in unfairness or clear prejudice").[5] Moreover, the plaintiff does not even identify the physicians who she asserts should have been recontacted. Notably, the plaintiff testified that she had no regular doctor (Tr. 386).

In sum, the medical evidence in this case was sufficient for the law judge to make a disability determination; the plaintiff is simply attempting to circumvent the fact that the meager medical evidence does not support her claims of a disabling condition. However, if the plaintiff thought she could obtain favorable information from her physicians, it was up to her to contact the doctors. See Ellison v. Barnhart, supra; see also Johnson v. Barnhart, supra. Accordingly, this contention is rejected.

C. The plaintiff also argues that the law judge failed adequately to question the vocational expert (Doc. 19, p. 10). As the plaintiff states, "[i]n order for a vocational expert's testimony to constitute substantial

---

[5]Instead, the plaintiff merely makes cryptic statements devoid of any substance, such as "there was a clear potential that the relevant information could have been obtained[] had requests been made of the treating sources" (Doc. 19, p. 11).

evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, supra, 284 F.3d at 1227. On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

In this case, the plaintiff argues that the law judge failed to include in the hypothetical question limitations on the plaintiff's ability to stand and walk, and environmental limitations regarding temperature extremes (Doc. 19, p. 10). This assertion is meritless.

The plaintiff's contention regarding the lack of limitations on standing and walking is incorrect. Thus, the law judge found that the plaintiff had the residual functional capacity to perform light work and he posed a hypothetical to the vocational expert which limited the plaintiff to "light exertional level" work (Tr. 391). Light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, 1983 WL 31251 at *6. Therefore, the hypothetical clearly included restrictions on the plaintiff's standing and walking that were commensurate with the degree of limitation found by the law judge.

With regard to environmental limitations, the law judge did not include in his determination of the plaintiff's functional capacity that she should avoid temperature extremes (Tr. 275). However, the dispositive hypothetical question was whether an individual with the plaintiff's profile could return to work as a cashier (Tr. 391). Since there was no reason to think that a cashier would be exposed to temperature extremes, there was no reason to include temperature extremes in the hypothetical question. Assuming the law judge erred in failing to include a temperature limitation in the hypothetical to the vocational expert, the plaintiff has not shown this to be anything more than harmless error. Thus, the plaintiff has presented no basis for thinking that the plaintiff's work as a cashier exposed her to temperature extremes.

D. Finally, the plaintiff challenges the law judge's credibility determination (Doc. 19, pp. 11-12). She seemingly argues that the law judge improperly rejected the plaintiff's credibility solely based on a lack of medical evidence to substantiate her allegations of debilitating pain (id., pp. 11-13). This contention also is meritless.

The lack of medical evidence was only one of several reasons – although a strong one – that the law judge gave for discounting the

-13-

plaintiff's credibility (Tr. 272).[6]  The law judge also noted the degree of medical treatment required by the plaintiff (id.).  In this connection, the law judge stated that "[t]he only regular treatment documented for the period [of disability] is mild pain medication, Motrin or Advil" (id.).  Furthermore, with respect to the plaintiff's daily activities, the law judge cited to the plaintiff's report that, during the disability period, "she was still able to prepare her own meals and shop with some help, load the dishwasher, do 2-3 loads of laundry per week, read two novels per week and the newspaper, watch television, and drive" (Tr. 273).  The law judge, moreover, noted that "[t]he primary treating physician during the period, Dr. Luzod, indicated no restrictions of claimant's work-related functioning and the State agency physicians, who evaluated the claim during the relevant period, concluded that the claimant was capable of performing medium level work activity..." (id.).  These are all appropriate factors to consider in evaluating whether allegations of disabling pain are credible.  20 C.F.R. 404.1529(c); 416.929(c).  Thus, the law judge,

---

[6]In addition to stating that the plaintiff's impairments could not reasonably be expected to produce debilitating pain, the law judge noted in his summary of the evidence that the record does not include any medical evidence for July 2000 through the end of the closed period (Tr. 269).

having pointed to several factors, provided a reasonable justification for his credibility determination.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and close this case.

DONE and ORDERED at Tampa, Florida, this 20th day of March, 2006.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE